**Bill Pat KELLEY, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 8695.

United States Court of Appeals
Tenth Circuit.

Aug. 23, 1966.

See also D.C., 38 F.R.D. 320.

Charles F. Brega, Denver, Colo., for appellant.

Donald P. MacDonald, Asst. U. S. Atty., Denver, Colo. (Lawrence M. Henry, U. S. Atty., with him on the brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and HILL, Circuit Judges.

PICKETT, Circuit Judge.

A three-count indictment charged that the appellant, Kelley, along with Dennis Glidewell,[1] entered the Wiley State Bank at Wiley, Colorado, with intent to commit the crime of larceny; (18 U.S.C. § 2113(a)), that they stole money of the value of more than $100.00 belonging to the bank and in its care, custody and control; (18 U.S.C. § 2113(b)), and that they possessed money of the value of more than $100.00, knowing that it had been stolen from the aforesaid bank.[2] (18 U.S.C. § 2113(c)). Kelley was convicted on the second count of the indictment and duly sentenced.

On the morning of March 26, 1964, it was discovered that the Wiley State Bank had been burglarized during the preceding night. The burglars had entered the bank building by forcing open a door with an instrument of some kind. Entrance into the vault was unsuccessfully attempted by drilling a hole through the brick wall. Then the combination lock on the vault door was forcibly removed and the vault door opened. A number of safety deposit boxes within the vault were opened and a substantial amount of currency and coins, including some collectors' items, were taken. In addition to the amount taken from the safety deposit boxes, 600 silver dollars and $200.00 in nickels belonging to the bank were taken. The loss totaled approximately $4400.00.

Around noon of the day following the theft, a member of the police force of Thornton, Colorado,[3] observed an automobile parked in the extreme northeast section of that city. The trunk of the automobile was open, and the officer observed two men preparing to burn a cardboard box. He immediately drove to the scene and prevented the destruction of the box and its contents which had been soaked with gasoline. Other officers were summoned and, upon inspection, they found that the box contained some coins, several pairs of gloves, two men's jackets, two pairs of men's boots, and other clothing.[4] The box also contained a number of coin wrappers usually used by banks in packaging coins. Kelley explained to the officers that he had met Glidewell only that morning and that they had driven to Thornton to examine a house which a relative of Glidewell's was interested in purchasing.

---

1. Glidewell was killed after the theft but before the indictment was returned. Although Glidewell is not named as a defendant in the indictment, it is alleged therein that Kelley did the various acts along with Dennis Glidewell, deceased.

2. The Wiley State Bank was insured by the Federal Deposit Insurance Corporation.

3. The City of Thornton is immediately north of Denver, Colorado.

4. The box, identified as having been in the Wiley bank, was missing after the robbery.

He said that they had found the box in front of a house and, thinking it was trash, were going to burn it. Kelley had in his possession over $1200.00 in currency, and Glidewell had approximately the same amount. Some of the currency in Glidewell's possession was identified as belonging to a customer of the bank and taken from one of the safety deposit boxes. None of the currency which Kelley had was identifiable.

The record discloses that footprints outside the bank doors and inside the vault were made by one of the boots which was in the box; that a number of the coin wrappers in the box were identified as having previously been in a safety deposit box at the Wiley bank prior to the theft; and that the finger prints and a palm print of the defendant Kelley were found upon some of these wrappers. Particles of brick, plaster, and paint dust taken from the gloves and other clothing in the box were from the room in which an attempt had been made to force a hole through the bank vault wall. There was also testimony that Kelley and Glidewell lived together in a Denver apartment and that they were not seen there on the night of the theft.

■■ It is first contended that the reference to Glidewell throughout the trial was prejudicial error and that the court's instruction to the jury that it should disregard any criminal acts of Glidewell was not sufficient to remove the prejudicial effect of this evidence.[5] There was no direct evidence that either Kelley or Glidewell participated in the theft. The prosecution relied entirely upon circumstantial evidence. Any circumstance probative of the guilt of Kelley was admissible. He and Glidewell were found in the process of destroying incriminating evidence which had been transported to an isolated spot in an au-

tomobile rented by Glidewell. Although Glidewell was not tried with Kelley for the crime, the prosecution was not prohibited from showing that he participated with Kelley in the theft. The jury could infer from the evidence that Kelley and Glidewell were associated in the theft of the Wiley bank. Acts of each associate which were done to accomplish their objective were admissible against the other, although no conspiracy was charged. Bartlett v. United States, 10 Cir., 166 F.2d 920; Lee Dip v. United States, 9 Cir., 92 F.2d 802, cert. denied 303 U.S. 638, 58 S.Ct. 526, 82 L.Ed. 1099; Cossack v. United States, 9 Cir., 82 F.2d 214, cert. denied 298 U.S. 654, 56 S.Ct. 678, 80 L.Ed. 1381; 298 U.S. 678, 56 S.Ct. 949, 80 L.Ed. 1399, reh. denied 298 U.S. 691, 56 S.Ct. 750, 80 L.Ed. 1409; Vilson v. United States, 9 Cir., 61 F.2d 901; Robinson v. United States, 9 Cir., 33 F.2d 238. Accordingly, any reference to the stolen money found in the possession of Glidewell could not have been prejudicial to Kelley. See, Self v. United States, 5 Cir., 249 F.2d 32.

■ The court instructed the jury that if it found the defendant guilty of actual theft from the bank as charged in Count II of the indictment, it could not also find the defendant guilty on Counts I and III.[6] The jury was given a form of verdict to be used if Kelley were found guilty of Count II. It is argued that the instruction and the submitted verdict unduly emphasized Count II of the indictment. While it appears that the submitted verdict was somewhat complicated, and might have been in more simple language, it followed established law and could not have prejudiced the defendant.

■ Finally, it is contended that the money introduced in evidence was not sufficiently shown to be that which was

---

5. The court instructed the jury as follows: "Now you should consider the indictment as if the name Dennis Harold Glidewell was not contained therein. Dennis Harold Glidewell was not a party defendant in this proceeding. The defendant Kelley is not responsible for any criminal acts or omissions of Glidewell, and you will therefore consider the charges in the indictment as though Glidewell's name did not appear therein."

6. This is in accord with Glass v. United States, 10 Cir., 351 F.2d 678.

taken from Kelley. The record is clear that after the arrests were made, the money taken from Kelley and Glidewell was in the possession of the Thornton police officer who turned it over to the Chief of Police and a lieutenant, who placed it in separate packages and deposited it in the office safe. Later the packages were removed by the Chief of Police and delivered to an agent of the F.B.I. The packages delivered to the F.B.I. agent contained the money taken from Kelley and Glidewell. The package containing the money taken from Kelley was clearly that which was later offered in evidence as Government's Exhibit No. 29. We find no error in the trial.

Affirmed.